IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NOV 4  2002

STEPHENIE BULLOCK, et al.                :

                                         :

v.                    : Civil Action No. DKC 2002-0798

                                         :

BOARD OF EDUCATION OF
MONTGOMERY COUNTY, et al.     :

**MEMORANDUM**

Presently pending and ready for resolution in this case are:
(1) the motion of Plaintiffs Brandon Haynes, Morgan Haynes, Austin
Haynes, Novian Haynes, Timothy Flowers-Jackson, Tyson Flowers-
Jackson, Tyrel Flowers-Jackson, Terrin Flowers-Jackson, Jerome
Washington, Steven Washington, Kristopher Washington, Utopia Davis,
Stephenie Bullock, Kim Ellison, Evella Washington, and Belverly
Davis for class certification; (2) the motion of Plaintiffs to
amend their motion for class certification; and (3) the second and
third motions of Plaintiffs for leave to amend the complaint.  For
the reasons that follow, the court will grant all of these motions.

**I.  Background**

The Stewart B. McKinney Homeless Assistance Act, Pub.L.No.100-
77,§ 102(b)(2), 100 Stat. 482, 485, was first enacted in 1987 to
provide a broad range of services and assistance to homeless
individuals and families.  Congress reauthorized a portion of the
Act in 2001 as the McKinney-Vento Homeless Education Assistance

Improvements Act of 2001 ("the McKinney-Vento Act"), Pub.L.No.107-110, Title X, § 1032, 115 Stat. 1989 (codified at 42 U.S.C. § 11301 *et seq.*). The reauthorization and amendments to the McKinney-Vento Act took effect in July, 2002. Subtitle VII-B of the McKinney-Vento Act pertains to the education of homeless children and youths. 42 U.S.C. §§ 11431-11435.

Under the McKinney-Vento Act, the local education agency ("LEA") is required to continue a homeless child's education in the school of origin ("home school") for the duration of homelessness, or enroll the child in the appropriate public school within the attendance area of the student's temporary housing ("local school"). 42 U.S.C. § 11432(g)(3)(A)(i),(ii). Where a homeless child attends school is to be determined based on his or her best interest, which requires "to the extent feasible, keep[ing] a homeless child or youth in the school of origin, except when doing so is contrary to the wishes of the child's or youth's parent or guardian." *Id.* at § 11432(g)(3)(B)(i). In addition, the McKinney-Vento Act requires the LEA to provide each homeless child with services comparable to those offered to other students who attend the selected school, including transportation, *id.* at 42 U.S.C. § 11432(g)(4), and to assist the parent or guardian of a homeless child in accessing transportation to the selected school. *Id.* at § 11432(g)(6)(A)(vii). Finally, the Act requires the LEA to

2

"review and revise any policies that may act as barriers to the enrollment of homeless children" in the selected school. *Id*. at § 11432(g)(7).

Plaintiffs allege that Defendants Board of Education of Montgomery County, an LEA, and Superintendent Jerry D. Weast have violated the McKinney-Vento Act in several ways, including the following: (1) failing to identify families as homeless as defined by the Act; (2) arbitrarily adopting a limited definition of "homeless" that denies homeless children and families their rights under the McKinney-Vento Act; (3) failing to provide a process for selecting the school that is in the best interest of the homeless child; (4) failing to provide an opportunity for the parent of a homeless child to state what he or she believes to be the best interest of the child in school selection; (5) failing to ensure that homeless children have an opportunity to remain in their schools of origin, and instead forcing them to transfer to the "local school" in the area in which they stay while homeless; (6) failing to comply with the parent's choice regarding school selection by refusing to provide the services necessary, such as transportation, to accommodate the parent's choice; and (7) failing to remove barriers when a parent chooses to re-enroll her child in the home school or transfer her child to the local school. Plaintiffs seek declaratory and injunctive relief on behalf of

3

themselves and the other homeless children and parents in Montgomery County whose McKinney-Vento Act rights are allegedly being denied by Defendants.

On May 16, 2002, Plaintiffs filed a motion for class certification. Plaintiffs Brandon Haynes, Morgan Haynes, Austin Haynes, Novian Haynes, Timothy Flowers-Jackson, Tyson Flowers-Jackson, Tyrel Flowers-Jackson, Terrin Flowers-Jackson, Jerome Washington, Steven Washington, Kristopher Washington, and Utopia Davis have requested that they be certified as representatives of a class comprising all school-age children aged three and older who, on or after November 1, 2000: (1) have lived, live or will live in Montgomery County, Maryland; and (2) during such period have been, are, or will be "homeless" as defined in the McKinney-Vento Act, 42 U.S.C. § 11434a ("Class A").[1] Plaintiffs Stephenie Bullock, Kim Ellison, Evella Washington, and Belverly Davis requested that they be certified as representatives for the class of all parents, guardians and adults responsible for children in

---

[1]The original motion for certification utilizes the definition of "homeless" in the McKinney Act, 42 U.S.C. § 11302. On or about July 17, 2002, Plaintiffs submitted a motion to amend the motion for class certification to revise the definition of Class A to reflect the definition of the term "homeless children and youth" used in the reauthorized McKinney-Vento Act, 42 U.S.C. § 11434a. That motion is hereby granted. Plaintiffs have also filed a third motion for leave to amend the complaint to ensure that class definitions and claims reflect the current version of the McKinney-Vento Act. That motion is also granted.

4

Class A ("Class B").² On May 31, 2002, Defendants opposed the motion for class certification.

## II. Analysis

Pursuant to Federal Rule of Civil Procedure 23, one or more members of a class may sue as representative parties on behalf of all class members if all four requirements of Rule 23(a) are met, as well as at least one of the requirements of 23(b). The four requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. The burden of establishing class status is on the Plaintiffs. *See Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (D.Md. 1997) (citing *International Woodworkers of America, AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir. 1981)). The court has a duty to undertake a "rigorous analysis" to satisfy itself that the Rule 23 requirements have been met. *Id.* (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)).

---

²At a hearing on June 17, 2002, the court granted Plaintiffs' first motion for leave to amend the complaint adding the Ellison and Washington families as Plaintiffs. By order dated July 2, 2002, the court deferred ruling on the second motion for leave to amend the complaint to add the Davis family as Plaintiffs, which had been filed the day of the hearing. Defendants have now had an opportunity to file an opposition to the second motion for leave to amend and have not done so. Accordingly, the court will grant Plaintiffs' second motion for leave to amend the complaint to add the Davis family as Plaintiffs.

5

Defendants assert in their opposition motion that Plaintiffs' request for class certification should be denied because: (1) Plaintiffs have failed to satisfy the numerosity requirement of Rule 23(a)(1); (2) Plaintiffs have failed to satisfy the commonality requirement of Rule 23(a)(2); (3) Plaintiffs have failed to satisfy the typicality requirement of Rule 23(a)(3); and (4) Plaintiffs Kim Ellison and Evella Washington are not proper class representatives.[3]   Each of these assertions is discussed below.

**A.   Numerosity**

In order to be certified as a class under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Plaintiffs have provided undisputed evidence that over one thousand homeless Montgomery County children were served by the shelter system between July 1, 2000 and June 30, 2001. *See* Paper no. 16, Ex. A.   Plaintiffs have also provided statistics from the Maryland State Department of Education showing that nearly 600 children in Montgomery County were homeless during 2000, *see* Paper no. 16, Ex. B, and that approximately 242 homeless students

---

[3]Defendants do not appear to contest Plaintiffs' fulfillment of the adequacy of representation requirement of Rule 23(a)(4). Defendants also do not challenge Plaintiffs' assertion that this case satisfies Rule 23(b)(2), which states that "the party opposing the class has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."

6

attended Montgomery County schools from August, 2001 to February, 2002. *See* Paper no. 16, Ex. C. Defendants assert, however, that Plaintiffs have failed to meet the numerosity requirement because they have not demonstrated that a sufficiently large number of homeless students in Montgomery County have actually been denied services under the McKinney-Vento Act. Defendants further argue that joinder would not be impracticable because the vast majority of the homeless students in Montgomery County live in shelters and are therefore not difficult to identify and properly serve.

No bright line test exists for analyzing numerosity; the determination rests on the court's practical judgment in light of the particular facts of the case. *See Hewlett*, 185 F.R.D. at 215 (citation omitted). In deciding whether the numerosity requirement has been met, the court looks at the "'nature of the claim . . . asserted by the plaintiffs and the number of persons who *could have been* injured by [the alleged wrongs].'" *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (emphasis added) (citing *Kelley v. Norfolk & Western Ry.*, 584 F.2d 34, 35 (4th Cir. 1978)). Contrary to Defendants' assertion (for which they cite no authority), plaintiffs seeking class certification need not necessarily demonstrate that each member of a proposed class has in fact suffered a violation of his or her rights. For example, in *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 333 (4th Cir.

7

1983), the Fourth Circuit affirmed the certification of a class of African-American employees in a suit alleging discrimination in promotions against an employer with two hundred black employees which promoted over one hundred employees annually. The Plaintiffs in *Lilly* were not required to demonstrate that every member of the proposed class had been a victim of discrimination; it was sufficient that they could have been victims of an alleged pattern and practice of discrimination.

In addition to judicial precedent in the Fourth Circuit, the nature of the allegations in the instant case supports the conclusion that Plaintiffs need not demonstrate for the purpose of the numerosity requirement that each member of the class has had his or her rights violated by Defendants. The allegations in this case pertain to the policies, patterns and practices of Defendants with regard to homeless students and their alleged violation of portions of the McKinney-Vento Act.   Because the Act itself establishes classes of persons with rights under the Act, it seems only logical that all persons within such statutory classes may be deemed members of a class of Plaintiffs challenging Defendants' policies and practices that allegedly violate the Act.   Therefore, given the statistics illustrating the existence of at least several hundred homeless children in Montgomery County in recent years, it appears to the court that the numerosity requirement is met.

8

The court finds equally unpersuasive Defendants' additional argument that joinder in the instant case is not impracticable because many proposed class members live in shelters, making it easy to identify and serve them. Practicality of joinder depends on several factors, including the size of the class, the ease of identifying its numbers and determining their addresses, the facility of making service on them if joined, and their geographic dispersion. *Hewlett*, 185 F.R.D. at 215 (citation omitted). As discussed above, the size of the class likely consists of at least several hundred individuals. While many of the proposed class members may live in shelters, as indicated by Exhibit C to Plaintiffs' memorandum, that analysis is limited to students identified by the state as homeless. The analysis, therefore, does not account for the other students in Montgomery County who may meet the definition of "homeless" under the McKinney-Vento Act but have not been identified by Defendants, as Plaintiffs allege.

Additionally, even if the majority of homeless children in Montgomery County at a given time do reside in a shelter, the transience of such individuals would undoubtedly make it impracticable to identify and join them all. As has been often stated, the numerosity requirement of Rule 23(a)(1) mandates only difficulty or impracticability of joinder, not impossibility. *See, e.g., Smith v. B&O Railroad Co.*, 473 F.Supp. 572, 581 (D.Md. 1979).

Here, Plaintiffs have met the burden of proving that joinder of all the persons in the proposed class would be impracticable.

**B.  Commonality and Typicality**

Rule 23(a)(2) requires that class members share common legal or factual issues, and Rule 23(a)(3) requires that the claims or defenses of the representative parties be "typical" of the claims or defenses of the class.  Defendants contend that the claims in the instant suit are too factually diverse to satisfy the commonality and typicality requirements.[4]  Defendants also argue that Plaintiffs' claims are too individualized for class-wide resolution because "each student's situation is peculiarly fact specific and necessitates an individualized inquiry into the factual circumstances of each case."  Paper no. 19.

As this court has previously stated, the commonality "inquiry is not whether common questions of law or fact predominate, but only whether such questions exist."  *Hewlett*, 185 F.R.D. at 216

---

[4]Defendants cite *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998), to support this proposition.  That case, however, is inapplicable to the case at bar because in *Broussard* the proposed class members had different contracts with the defendants, giving rise to different duties allegedly owed to class members.  Because of the different duties involved, the proposed class members were deemed unable to "advance a single collective breach of contract action."  *Broussard*, 155 F.3d at 340-41.  The inability to advance a single action does not exist in the instant case where the proposed class members all base their claims on the same source: rights vested under the McKinney-Vento Act.

(citations omitted). Commonality does not require class members to share *all* issues in the suit, but simply a single common issue. *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C.1992), *aff'd,* 6 F.3d 177 (4th Cir.1993); *Holsey*, 743 F.2d at 216-17. Thus, factual differences among the class members' cases will not preclude certification if the class members share the same legal theory. *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D.Md. 1998) (citing *Brown v. Eckerd Drugs, Inc.,* 663 F.2d 1268, 1275 (4th Cir.1981), *vacated on other grounds,* 457 U.S. 1128 (1982)); *Hewlett*, 185 F.R.D. at 216.

In the instant case, as Defendants accurately noted, there are undoubtedly factual differences among the cases of proposed class members, including each family's present living arrangements, the location of the home school, the location of the school the student is currently attending, and the feasibility of providing transportation from the residence to the school sought.   Paper no. 19 at 5-6.   However, the proposed class members share common questions of law, specifically whether the policies, patterns, and practices of Defendants have violated their McKinney-Vento Act rights.[5]   For example, the proposed class members share in common

---

[5]It should be noted that there are also substantial factual similarities between proposed class members, such as moves from one school attendance area to another due to homelessness and lack of transportation resources to and from school.

questions regarding Defendants' failure to identify "homeless" students as such, Defendants' failure to inform them of their right under the McKinney-Vento Act to remain at their home schools, and Defendants' failure to inform them of or provide them with transportation services. The common legal theory and questions in this case are not negated by the differences in the individual class members' claims. For the same reason, the court disagrees with Defendants that Plaintiffs' claims are "too individualized for class-wide resolution." The court therefore finds that the commonality requirement of Rule 23(a)(2) has been satisfied.

The typicality requirement, which has been observed to be a redundant criterion, determines "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Hewlett*, 185 F.R.D. at 217 (citing *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D.Kan. 1996)). This court has previously held that a plaintiff's claim may differ factually and still be "typical" of the claims of class members if "'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Id.* (citations omitted).

12

In this case, the claims of the named Plaintiffs arise from the same practices and patterns that allegedly give rise to the claims of other proposed class members, namely violation of McKinney-Vento Act rights, and all of the claims are based on the same legal theory. Like the named Plaintiffs, the class members are homeless parents and children who allege that the policies, patterns, and practices of Defendants concerning homeless students have denied them their rights under the McKinney-Vento Act. Therefore, Defendants' arguments regarding factual diversity among Plaintiffs' claims and their individualized nature are unpersuasive, and the court finds that Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

## C. Propriety of Plaintiffs Ellison and Washington as Class Representatives

Defendants, citing *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir. 1978), assert that two of the named Plaintiffs, Kim Ellison and Evella Washington (and presumably their children), are not proper class representatives because they are not members of the class they seek to represent. Although not specified in Rule 23, the court must be able to ascertain the general boundaries of the proposed class at the outset of the litigation, and the named plaintiffs must be members of the proposed class. *See Peoples*, 179 F.R.D. at 496 (citing *Bailey v.*

13

*Patterson*, 369 U.S. 31, 33 (1962); *In re A.H. Robins*, 880 F.2d 709, 728 (4th Cir. 1989); *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976)). *See also East Texas Motor Freight System, Inc. v. Rodriguez et al.*, 431 U.S. 395, 403 (1977). In the case at bar, Defendants argue that named Plaintiffs Ellison and Washington are not class members because they live in transitional housing provided through the Silver Spring Interfaith Housing Coalition ("SSIHC"), and, therefore, are not "homeless." In making this argument, however, Defendants fail to make reference to or discuss the definition of "homeless" used in the McKinney-Vento Act.

The definition of "homeless children and youths" was revised in the reauthorized McKinney-Vento Act, which took effect on July 1, 2002. The current definition of "homeless children and youths" includes, in pertinent part, those who are "living in emergency or transitional shelters . . . ." 42 U.S.C. § 11434(a)(2)(B)(ii). The next question then is whether the current residences of Plaintiffs Ellison and Washington and their children qualify as a "transitional shelter." The term "transitional housing" is defined as "housing, the purpose of which is to facilitate the movement of homeless individuals and families to permanent housing within 24 months or such longer period as the Secretary determines necessary." 42 U.S.C.§ 11384(b). The program through which housing is provided to Plaintiffs Ellison and Washington and their

14

*Patterson*, 369 U.S. 31, 33 (1962); *In re A.H. Robins*, 880 F.2d 709, 728 (4th Cir. 1989); *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976)). *See also East Texas Motor Freight System, Inc. v. Rodriguez et al.*, 431 U.S. 395, 403 (1977). In the case at bar, Defendants argue that named Plaintiffs Ellison and Washington are not class members because they live in transitional housing provided through the Silver Spring Interfaith Housing Coalition ("SSIHC"), and, therefore, are not "homeless." In making this argument, however, Defendants fail to make reference to or discuss the definition of "homeless" used in the McKinney-Vento Act.

The definition of "homeless children and youths" was revised in the reauthorized McKinney-Vento Act, which took effect on July 1, 2002. The current definition of "homeless children and youths" includes, in pertinent part, those who are "living in emergency or transitional shelters . . . ." 42 U.S.C. § 11434(a)(2)(B)(ii). The next question then is whether the current residences of Plaintiffs Ellison and Washington and their children qualify as a "transitional shelter." The term "transitional housing" is defined as "housing, the purpose of which is to facilitate the movement of homeless individuals and families to permanent housing within 24 months or such longer period as the Secretary determines necessary." 42 U.S.C.§ 11384(b). The program through which housing is provided to Plaintiffs Ellison and Washington and their

14

children is time-limited and is focused on helping families move on
to permanent housing.  Paper no. 26, Ex. F, ¶4, Ex. G, ¶2.[6]  Based
on the description of SSIHC transitional housing provided by its
executive director, it appears to the court that persons who reside
in the housing provided by SSIHC fall within the statutory
definition of "homeless."[7]  Plaintiffs Ellison and Washington and
their children are therefore "homeless" for the purpose of the
McKinney-Vento Act and are proper representatives of the classes
they seek to represent.

**III.  Conclusion**

For the foregoing reasons, the court will grant the motions of
Plaintiffs for class certification and for amendment of the motion
for class certification.  The court will also grant Plaintiffs'
second and third motions for leave to amend the complaint.  A
separate Order will be entered.

Deborah Chasanow

DEBORAH K. CHASANOW
United States District Judge

November 4, 2002.

---

[6]Plaintiff Ellison and her children have lived in the SSIHC
transitional housing for just over a year, and Washington and her
children have lived there for one year.

[7]The Declaration of Sara Cartmill, the executive director of
SSIHC, regarding the nature of the housing provided through that
organization is more persuasive than the website materials about
SSIHC provided by Defendants which were not prepared by SSIHC
itself.

15